IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEPHEN DOUGLAS McCASKILL, # K-77293, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 17-cv-354-NJR ) |
| WEXFORD HEALTH SOURCES, INC., ALFONSO DAVID, WARDEN DENNISON, LORREAL LECRONE, DEBBIE PERKINS, NURSE CAROL, MRS. SMOOT, and REEDER, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 while he was incarcerated at Shawnee Correctional Center ("Shawnee"). Since he filed the case, he has been released from custody. (Doc. 6). Plaintiff claims that Defendants transferred him from the prison's Health Care Unit to general population, where he was unable to access meals or meet his hygiene needs, due to his stroke-related impairments. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

**The Complaint**

Plaintiff suffered a stroke in 2011 (Doc. 1, p. 7). As a result, he cannot lift a food tray, and he cannot walk or mobilize after any period of rest until he sits up for 25-30 minutes. He has extreme weakness on the left side of his body and needs a cane for support while walking. He

often does not have bowel control and cannot make it to the bathroom, so he needs a constant supply of wipes and a bedpan in order to clean himself after accidents. (Doc. 1, p. 8). Plaintiff's condition had caused him to miss many meals while he was in general population, and officers complained about Plaintiff having to depend on kitchen workers to bring his food trays to his table for him and clean up after him. Plaintiff explained his problems to Dr. David on many occasions. (Doc. 1, p. 7).

Because of Plaintiff's mobility impairments and medical needs, he was placed in Shawnee's Health Care Unit on February 23, 2016. Former Warden Etienne made this housing decision on the advice of Dr. David, and the warden ordered this to be a permanent housing assignment for Plaintiff. (Doc. 1, p. 7). On November 3, 2016, however, current Warden Dennison ordered Plaintiff to be moved back into general population. Plaintiff's condition had not changed. When Plaintiff discussed the matter with Dr. David, he responded that "it was the Warden's call and not his" to return Plaintiff to general population.

Since November 3, 2016, Plaintiff was required to walk to the chow hall in order to eat. He was not allowed enough time to get there in light of his impairments, so he was forced to miss meals 99% of the time. (Doc. 1, pp. 8, 12). Three days after Plaintiff's reassignment to general population, on November 6, 2016, Plaintiff was assigned an inmate aide. Even with the aide's help, however, Plaintiff continued to miss meals. Further, he was no longer provided with the wipes or bedpan that he needed in order to maintain his personal hygiene in light of his bowel control problems. Lecrone (Director of Nursing) refused or delayed meeting with Plaintiff when he sought help obtaining these supplies. (Doc. 1, pp. 10, 12). Plaintiff also complained to Smoot (Health Care Administrator) about the discontinuation of his supplies after his move to general population, and his inability to get meals, but she took no action. (Doc. 1, pp. 12-13; Doc. 1-1, p.

3-8).

Plaintiff asserts that his reassignment to general population without adequate assistance to meet his nutritional and health/hygiene needs violated the "Disability Act of Illinois." (Doc. 1, p. 9). He also complains that Shawnee does not provide a yard or gym for disabled inmates. (Doc. 1, p. 10).

Plaintiff asserts that numerous officials lied and conspired to remove him from the Health Care Unit. (Doc. 1, p. 10). He specifically claims that Lecrone, Dennison, and David worked together to get him out of the Health Care Unit in retaliation for Plaintiff's alleged involvement in assisting another inmate with a lawsuit against those officials. Plaintiff denied acting as the inmate's attorney, but then states in the Complaint that he prepared a motion to dismiss these defendants from the suit. (Doc. 1, p. 11).

Plaintiff also sues Wexford Health Sources, Inc., for hiring employees who are not professional, capable, or competent to provide medical care. (Doc. 1, p. 12). Finally, Plaintiff alleges that Counselor Reeder failed to process Plaintiff's grievances. (Doc. 1, p. 13).

Plaintiff seeks damages for the violations of his rights. (Doc. 1, p. 14).

### Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment claim for deliberate indifference to Plaintiff's medical, nutritional, and hygiene needs, for causing him to miss

|  | meals and discontinuing his hygiene supplies after housing him in the general population; |
|---|---|
| **Count 2:** | Claim under the Americans with Disabilities Act and/or Rehabilitation Act, for failing to accommodate Plaintiff's disabilities after moving him to general population, causing him to miss meals and depriving him of necessary hygiene supplies; |
| **Count 3:** | First Amendment retaliation claim against David, Dennison, and Lecrone for removing Plaintiff from the Health Care Unit due to his actual or perceived involvement in another inmate's lawsuit against these Defendants; |
| **Count 4:** | Due Process claim against Reeder for failing to properly handle Plaintiff's grievance(s). |

Plaintiff shall be allowed to proceed against some of the Defendants in Counts 1 and 2, and he may proceed with Count 3. As explained below, however, Count 4 fails to state a claim upon which relief may be granted, and it shall be dismissed.

### Count 1 – Deliberate Indifference

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regard to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

5

The second requirement is a subjective element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

In this case, Plaintiff claims that after he was placed back in general population, he was deprived of adequate food on a regular basis because of his inability to access the chow hall. In addition, after he was no longer provided with personal hygiene supplies (wipes and a bedpan), he was unable to clean himself properly when he lost bowel control or was unable to make it to the bathroom in time. These conditions arguably deprived Plaintiff of his basic needs for food and sanitation, and posed a substantial risk to his health.

Turning to the subjective component of this claim, Plaintiff alleges that Dr. David was aware that his nutritional and hygiene needs were not being met while he was in general population before February 2016. It appears that Dr. David was instrumental in having Plaintiff moved to the Health Care Unit because of these problems. When Plaintiff was transferred out of the Health Care Unit in November 2016, however, Dr. David allegedly failed to take any steps to mitigate the risk of harm to Plaintiff from returning to general population, although he was well aware of those risks. At this stage of the case, Plaintiff has stated a colorable deliberate indifference claim against Dr. David in Count 1 that merits further review.

Similarly, Plaintiff indicates that Warden Dennison was also aware at least of Plaintiff's inability to obtain regular meals without assistance in general population, yet he moved Plaintiff

out of the Health Care Unit anyway. Plaintiff may also proceed with the deliberate indifference claim in Count 1 against Dennison.

Turning to Lecrone, whether or not she took part in the decision to move Plaintiff back to general population, she allegedly refused to help Plaintiff obtain the personal hygiene supplies that he was no longer given after he left the Health Care Unit. She was aware of his condition and his dependence on these items, from her dealings with Plaintiff when he was in the Health Care Unit. Her lack of response when he asked for help could amount to deliberate indifference, thus Count 1 shall also proceed against Lecrone.

After Plaintiff's housing reassignment, he complained to Health Care Administrator Smoot about his inability to obtain hygiene supplies and regular meals, but she did nothing to assist him with these health-related needs. He attaches a detailed letter to her describing his medical conditions and the problems he faced in general population. (Doc. 1-1, pp. 3-8). Plaintiff also may proceed with the deliberate indifference claim in Count 1 against Smoot.

The remaining Defendants shall be dismissed from this claim without prejudice, however. Plaintiff's only factual allegations against Nurse Perkins are that she asked him why he was assigned to stay in the Health Care Unit, and then told him she didn't care. (Doc. 1, pp. 10-11). Nurse Carol also asked Plaintiff numerous times why he was being housed in the Health Care Unit. (Doc. 1, p. 11). These comments do not indicate that either of these individuals acted or failed to act with deliberate indifference to a risk of harm to Plaintiff. Further, Plaintiff's conclusory claims that these Defendants "lied, plotted, and conspired" to remove him from the Health Care Unit are unsupported by any factual allegations.

Finally, Plaintiff fails to state a deliberate indifference claim against Wexford Health Sources, Inc. ("Wexford"). Wexford is a corporation that employs health care providers David,

Lecrone, and Smoot, and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). Here, Plaintiff merely states that Wexford engaged in poor or negligent hiring practices, by employing the individuals who Plaintiff believes acted unprofessionally and incompetently. This is not sufficient to impose liability on Wexford. Wexford's employment of the individual Defendants does not constitute a policy or practice that caused them to violate Plaintiff's rights. Wexford also shall also be dismissed from Count 1.

To summarize, the deliberate indifference claims in **Count 1** shall proceed only against David, Dennison, Lecrone, and Smoot.

### Count 2 – Americans with Disabilities Act/Rehabilitation Act

Title II of the ADA prohibits public entities from denying qualified individuals with disabilities the opportunity to participate in the services, programs, or activities of the public entity because of their disabilities. 42 U.S.C. § 12132. The Supreme Court has held that Title II of the ADA applies to prisons. *See Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206 (1998). Furthermore, in *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court recognized that an inmate may bring a private cause of action for damages under Title II, if the state actor's conduct also violates the Eighth Amendment.

Based on his physical condition, Plaintiff is arguably a qualified disabled person for ADA purposes. 42 U.S.C. § 12102(1). Thus, if his allegations state a claim that Defendants may have been deliberately indifferent to his disability-related needs for supplies to care for his hygiene or

8

medical needs, he may proceed on his claim under the ADA. Similarly, the denial of Plaintiff's access to regular meals because of his physical impairments indicates a possible ADA violation.

Claims under Title II of the ADA must be brought against a governmental (i.e., public) entity rather than against an individual, 42 U.S.C. § 12132. Therefore, the Court will also allow Plaintiff's ADA Title II claim based on the deliberately indifferent failure to provide him with access to food and hygiene supplies to proceed against Warden Dennison in his official capacity.

Turning to the Rehabilitation Act, the Seventh Circuit instructs that claims of discrimination on account of a disability, especially those from *pro se* prisoner litigants, must be analyzed in light of both the ADA and the Rehabilitation Act, whether or not the plaintiff has asserted a claim under the latter statute. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667 (7th Cir. 2012). A state prisoner may have a cause of action under the Rehabilitation Act even if the ADA does not give rise to a claim. *Id.* To state a claim under the Rehabilitation Act, a plaintiff must "allege that (1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros*, 684 F.3d at 672; *see* 29 U.S.C. § 705(2)(B). A refusal to make accommodations for a prisoner's disability "is tantamount to denying access." *Id.*

In Plaintiff's case, his factual allegations support a Rehabilitation Act claim that he was denied access to the "program or activity" of the prison meal service on account of his disability. The same could be said about the failure to accommodate Plaintiff's need for hygiene supplies to maintain adequate cleanliness in light of his mobility limitations and bowel control problems.

Plaintiff may thus proceed in **Count 2** against Dennison, in his official capacity, on the food and hygiene matters under both the ADA and Rehabilitation Act.

Plaintiff's statement that Shawnee did not have yard or gym facilities for disabled inmates, however, is dismissed without prejudice at this time, because the Complaint does not contain sufficient facts to determine whether Plaintiff states a cognizable claim on those matters.

**Count 3 – Retaliation**

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement, activities that are protected by the First Amendment. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Here, Plaintiff asserts that Lecrone, Dennison, and David, who had been sued by another prisoner, moved Plaintiff out of the Health Care Unit in retaliation against him for assisting the other prisoner in his lawsuit. Plaintiff may pursue a retaliation claim based on these factual allegations. A prisoner who experiences an adverse action because he acted as a "jailhouse lawyer" for another inmate may maintain a retaliation claim. *See Bridges v. Gilbert*, 557 F.3d 541, 554 (7th Cir. 2009); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) ("If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access to the courts, he has a claim under § 1983.").

At issue here is whether Plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a

motivating factor" in the defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 551. Further factual development will be necessary in order to resolve these questions. Accordingly, Plaintiff may proceed with the retaliation claim in **Count 3** against David, Dennison, and Lecrone.

### Dismissal of Count 4 – Grievance Mishandling

Finally, Plaintiff asserts that Counselor Reeder violated his due process rights by neglecting to process at least one of his grievances. But the mishandling or failure to respond to grievances does not implicate any constitutional right.

Plaintiff's efforts to exhaust his administrative remedies by using the prison grievance process may be relevant in the event that a Defendant raises a challenge to Plaintiff's ability to maintain a § 1983 suit over the substantive matters raised in the grievances. *See* 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Nonetheless, a Defendant's action or inaction in handling Plaintiff's grievances does not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

For these reasons, **Count 4** against Reeder shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Disposition

**COUNT 4** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**REEDER** is **DISMISSED** from this action with prejudice. **WEXFORD HEALTH SOURCES, INC., PERKINS,** and **CAROL** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for **DAVID, DENNISON, LECRONE,** and **SMOOT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to

include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** May 26, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**